IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

JORGE MARTINEZ,

                         Petitioner,

        v.                                              Civil Action No.
                                                        9:04-CV-0090 (GTS/DEP)

DAVID L. MILLER, Superintendent,
  Eastern Correctional Facility,

                         Respondent.

─────────────────────────────────

APPEARANCES:                             OF COUNSEL:

FOR PETITIONER:

JORGE MARTINEZ, *Pro Se*
01-A-1333
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY  10562

FOR RESPONDENT:

HON. ANDREW M. CUOMO                 LISA E. FLEISCHMANN, ESQ.
Office of the Attorney General        Assistant Attorney General
120 Broadway
New York, NY 10271

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

        Petitioner Jorge Martinez, a New York State prison inmate as a

result of an Ulster County Court conviction entered in 2001 for burglary and criminal possession of stolen property, has commenced this proceeding seeking federal habeas intervention pursuant to 28 U.S.C. § 2254.  In his petition, Martinez asserts eight separate grounds for habeas relief, including some which implicate pretrial matters and others involving trial court rulings, additionally asserting that he received ineffective assistance of counsel at both the trial and appellate levels.

Having carefully considered the instant petition, applying the requisite deferential standard, I find that Martinez's conviction, which has withstood considerable state court scrutiny, was not the product of a constitutional violation.  Accordingly, I find no basis to conclude that federal habeas relief is warranted, and therefore recommend denial of the petition.

I.    BACKGROUND

Between December 9, 1998 and July 14, 1999, several residential burglaries took place in the City of New Paltz and the Town of Lloyd both of which are situated in Ulster County, New York.  To accomplish the burglaries, the intruder typically cut window screens to enter the homes, stealing jewelry and electronic items.  On July 14, 1999, petitioner was

arrested in connection with the burglaries after one of his victims

returned to his home for lunch, saw Martinez standing inside his home,

and later identified him for police officials. Search warrants were

subsequently obtained and executed at petitioner's home, resulting in

recovery of jewelry belonging to several of the burglary victims.

II.    PROCEDURAL HISTORY

   A.    State Court Proceedings

      1.    Petitioner's Trial

Petitioner was indicted by an Ulster County grand jury and charged

with fourteen counts of burglary in the second degree (N.Y. PENAL LAW §

140.25(2)), two counts of criminal possession of stolen property in the

fourth degree (N.Y. PENAL LAW §165.45(1)), and five counts of criminal

possession of stolen property in the fifth degree (N.Y. PENAL LAW

§165.40). *See* Dkt. No. 47 at 1; Dkt. No. 51 at 1.  Prior to trial a

*Huntley/Wade*[1] hearing was held on December 19 and 20, 2000 to

address the admissibility of certain identification testimony to be offered

at trial.  Following the hearing, the trial court denied petitioner's motions

to suppress a show-up identification made by Dan Phillips, one of his

---

[1]    *U.S. v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967); *People v. Huntley*, 15 N.Y.2d 72, 204 N.E.2d 179, 255 N.Y.S.2d 838 (1965).

victims, and line-up identifications made by Phillips and another witness, Arnell Defino.  The court also denied petitioner's motion to preclude statements made by him to Detective Snyder, following his arrest.[2]

A jury trial was commenced in Ulster County Court on January 22, 2001 to address the charges against Martinez.  Following the prosecution's opening statement, the trial court dismissed twelve counts of the indictment, leaving two counts of second degree burglary, two counts of fourth degree criminal possession of stolen property, and five counts of fifth degree possession of stolen property for the jury's consideration.  Trial Tr. at 171-95.

The evidence at trial established that the first of the two burglaries in issue at trial took place at the Pironi residence, located at 4 Southgate Road.  Trial Tr. at 255.  On April 28, 1999, Theresa Pironi returned to her home and discovered that a bedroom window had been removed, and there were holes in the window screen.  *Id.* at 255-57.  Several pieces of jewelry and a crystal box in which they were kept, as well as a

---

[2]     The trial court's decision denying petitioner's pre-trial motions was not included among the materials supplied by the parties.  According to the respondent, a copy was not provided to the Attorney General's Office, and it appears to be missing from the original record on appeal.  *See* Respondent's Memorandum (Dkt. No.  51) at p.  5.

camcorder and a camera, were discovered missing.  *Id.* at 257-58, 265-71.  Pironi testified that she did not know Martinez, nor did she give him permission to go into her home or to take any items.  *Id.* at 264-65. Pironi identified a trial exhibit as a ring taken from her home.  Trial Tr. at 263, 357.  A fingerprint retrieved from a glass bowl in the Pironi residence matched petitioner's right-hand ring finger.  Trial Tr. at 382-88, 515-24.

The second burglary in issue took place on July 14, 1999 at the Phillips residence, located at 525 Route 9W in the Town of Lloyd.  The residence was separated from an adjacent gully and woods by a four-foot fence.  *Id.* at 279-80.  Dan Phillips testified that he returned home early from work for lunch on the day of the burglary and saw a strange light brown car backed up to the kitchen window with the trunk lid up. Trial Tr. at 273-75.  Phillips observed the petitioner standing behind the front screen door looking out at him.  *Id.* at 275.  Martinez subsequently slammed the main front door closed, fled the house and ran toward the gully.  *Id.* at 280-81.

Phillips called the Town of Lloyd police; while he was on the phone reporting the incident, petitioner returned to the house.  Trial Tr. at 284-

5

86.  Martinez asked Phillips, "[w]hose car is this," referring to the light brown car.  *Id.* at 285-86.  Petitioner then got into the car and drove toward the road, hitting rocks in the Phillips yard.  *Id.* at 286-88. Phillips later told the police dispatcher that the license plate on the car began with the letter "Y".  *Id.* at 313.  When Officer James Janso responded to the Phillips home and began to slow down in front of it, Phillips pointed him in the direction in which the petitioner had fled.  *Id.* at 289, 447-48.

Upon taking pursuit, Officer John Grube observed Martinez driving a car that matched the description given by Phillips.  The officer conducted a traffic stop of petitioner's vehicle, and waited for assistance to arrive.  Trial Tr. at 389-92.

While awaiting back-up, Office Grube observed petitioner moving around inside the car.  Trial Tr. at 393-95.  Martinez opened the car door, looked across the street, and then looked forward.  *Id.*  Suspecting that petitioner was going to flee, Officer Grube used his public announcement system to order petitioner to stay in his car and close the door.  *Id.*

Officer Janso arrived at the scene minutes later, at which time petitioner was ordered out of the car.  Trial Tr.  at 449-50.   At the time

petitioner was sweating profusely, and appeared to be very nervous. *Id.* at 395, 453-54. Martinez's pant knee was torn, and his clothing appeared soiled and grass-stained. *Id.* at 395-96, 453-54.  Petitioner claimed he was coming from a pizzeria, but could not tell Officer Janso its name or location. *Id.* at 452-55.  Petitioner was handcuffed and placed in the back seat of Officer Grube's patrol car. *Id.* at 396.  Phillips arrived at the location within minutes and identified petitioner as the man he saw inside his home, and also identified the car petitioner was driving as that which was parked near his home.  Trial Tr. at 292-95, 307-09, 314-15, 396-97, 455.

Officer Grube transported Martinez to police headquarters and transferred him to Officer Janso for processing. Trial Tr. at 398-99.  The officer then went to the Phillips residence, where he met Elena Phillips. *Id.* at 320, 399-400.  Mrs. Phillips advised the officer that she had discovered a black glove that did not belong to her on the dresser in her bedroom. *Id.* at 320, 399.  Officer Grube took the glove back to police headquarters, and began to process it as evidence. *Id.* at 400-407. Petitioner was nearby in the same room.  Officer Grube did not speak to petitioner or ask him any questions while he processed the glove. *Id.* at

320-21, 400-07.  Petitioner saw the glove and asked Officer Grube where he had found it.  *Id.* at 407.   Petitioner told Officer Grube that the glove belonged to his wife, and had been in the trunk of his car.  *Id.* at 407-09.  Officer Grube responded that the glove was found in the Phillips residence.  *Id.* at 408.  Petitioner appeared to be surprised to learn this, but did not reply.  *Id.*  Officer Janso advised Martinez of his *Miranda*[3] warnings, and collected his clothing as evidence.  *Id.* at 455, 460.

Detective Joseph Snyder, of the Town of New Paltz Police Department, had been investigating the burglaries that occurred in his jurisdiction between December 1998 and July 1999, and had spoken with Martinez in January of 1999 in connection with that investigation.  Trial Tr. at 346-48.  Upon learning of petitioner's arrest, the detective went to the Town of Lloyd police station to interview him.  *Id.* at 347-48.  Petitioner told Detective Snyder that he knew Snyder had been "trying to get him [petitioner] for a long time."  *Id.* at 348, 412.  When Detective Snyder told petitioner he "must be good," petitioner responded that he was "good at what he does."  *Id.* at 348.

Police officials applied for and executed two warrants authorizing

---

[3]     *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966).

searches of petitioner's residence, one on July 22, 1999,[4] and one on

August 10, 1999.  During the execution of the second search warrant,

police recovered a ring belonging to Theresa Pironi. Trial Tr. at 263, 339.

Police officials also recovered several pieces of jewelry belonging to

victims of other burglaries in New Paltz and the Town of Lloyd. None of

these people knew petitioner, and they did not give him permission to

take or possess their property.  *Id.* at 217-28, 232-35, 238-41, 242-46,

250-55, 339-44.

Before submitting the case to the jury, the trial court dismissed one

count of fourth degree criminal possession of stolen property and

reduced the other count charging that crime to fifth degree criminal

possession of stolen property.  Trial Tr. at 558-59.  On January 25, 2001,

the jury convicted petitioner of two counts of second degree burglary and

six counts of fifth degree criminal possession of stolen property.  Trial Tr.

at 648-51.  On February 26, 2001, petitioner was sentenced to serve two

consecutive determinate terms of fifteen years on the burglary charges,

---

[4]        Although police officials recovered several items believed to have
been stolen during the execution of the first search warrant, the trial court
suppressed those items because the prosecutor did not produce a witness who
was present during the search that led to the recovery of the items.  Trial Tr. 357-
58, 486-95.

and six concurrent one-year terms on each count of criminal possession

of stolen property.  *People v. Martinez*, 9 A.D.3d 679, 680, 779 N.Y.S.2d

821 (3d Dept. 2004).

       2.   <u>Direct Appeal</u>

     Petitioner appealed his conviction to the New York State Supreme

Court Appellate Division, Third Department.[5]  *See* Dkt. No. 52, Ex. E.  In

his appeal, petitioner advanced several grounds for reversal, arguing

that 1) his statements to Sergeant Snyder should have been precluded

because the prosecution failed to timely serve him with notice of its intent

to use the statements at trial, as required under New York's Criminal

Procedure Law ("CPL") § 710.30;  2) the trial court erred when it

determined that the second search warrant was based upon probable

cause; 3) the show-up identification procedure, during which Dan Phillips

identified petitioner, was unduly suggestive; 4) testimony by Officers

Janso and Grube that Phillips identified petitioner constituted improper

bolstering, and trial counsel was ineffective for not objecting to this

testimony; 5) the trial court should have charged second degree criminal

---

     [5]     Although petitioner's notice of appeal was filed on March 26, 2001,
that appeal was not perfected until appellate counsel filed a brief with the Third
Department on or about November 10, 2003.  Dkt. No. 52, Ex. E.

trespass as a lesser included offense of second degree burglary; and 6)

the sentence imposed was excessive.  *See* Dkt. No. 52, Ex. E ("App.

Br.") at 10-30.   On July 15, 2004, the Third Department affirmed

petitioner's conviction.  *People v. Martinez*, 9 A.D.3d 679, 779 N.Y.S.2d

821 (3d Dept. 2004).

Petitioner sought leave to appeal in the New York State Court of

Appeals.  In support of that request, petitioner's counsel raised two

claims, questioning whether 1) petitioner's statements should have been

precluded in the absence of timely notice pursuant to CPL § 710.30; and

2) the second search warrant was supported by probable cause.  Dkt.

No. 52, Ex. I.  Petitioner filed a *pro se* supplemental leave application in

which he raised the other four claims that were presented to the

Appellate Division on direct appeal.  Dkt. No. 52,  Ex. J.  Leave to appeal

to the New York State Court of Appeals was denied on September 20,

2004.  *People v. Martinez, 3* N.Y.3d 709, 818 N.E.2d 679, 785 N.Y.S.2d

37 (2004); Dkt. No. 52, Ex. K.

### 3.      Collateral State Court Challenges

#### a)      Habeas Corpus

In July of 2003, petitioner sought habeas relief from the Third

Department.  Dkt. No. 52, Ex.  A.  In support of that application, Martinez alleged that because his arraignment and sentencing minutes could not be located, and thus his direct appeal could not be perfected, his continued detention was unlawful.  *See id.*, ¶ 2.  That application was rejected by the Third Department on September 25, 2003, Dkt. No. 52, Ex. B, and leave to appeal that denial to the New York State Court of Appeals was denied on December 23, 2003.  *Id.,* Exs. C, D.

> b)    *Coram Nobis*

Proceeding *pro se,* petitioner sought a writ of error *coram nobis* in the Third Department on June 7, 2005.  In support of that application, petitioner argued that appellate counsel was ineffective for 1) not timely securing his arraignment and sentencing minutes, or moving to reconstruct the minutes in order to timely perfect his appeal; 2) raising only two claims in his leave application; 3) not arguing that the trial court did not have personal or subject matter jurisdiction over him because it failed to secure his appearance at arraignment; and 4) not arguing that he was denied due process and equal protection when he was not refused the opportunity to testify before the grand jury. *See* Dkt. No. 52, Ex. L. The Third Department denied the application on July 29, 2005,

and leave to appeal that denial to the New York State Court of Appeals was denied on September 26, 2005.  Dkt. No. 52, Exs. M, O.

c)   Section 440.10

On August 25, 2005, the petitioner filed a motion to vacate his conviction pursuant to CPL §440.10, arguing that 1) the trial court lacked personal and subject matter jurisdiction because it failed to secure his appearance at arraignment on the indictment; and 2) he was denied equal protection and due process when he was not permitted to testify before the grand jury. *See* Dkt. No. 52, Ex. P.  On September 29, 2005, the trial court denied the motion pursuant to CPL §440.10(2)(c), finding that although sufficient facts appeared on the record to have permitted adequate review of these claims on direct appeal, petitioner unjustifiably failed to raise them in that proceeding.  Dkt. No. 52, Ex. Q.  Leave to appeal that ruling was denied by the Third Department on November 23, 2005. Dkt. No. 52, Exs. R, S.

B.   This Proceeding

Petitioner commenced this proceeding on January 26, 2004. Dkt. No. 1. On February 10, 2004, Martinez was ordered to file an amended petition setting forth the dates on which he sought state post-conviction

13

or other collateral review.  Dkt. No. 5.  Petitioner thereafter filed an
amended petition on March 10, 2004, Dkt. No. 6.

On July 28, 2004, the Office of the Attorney General for the State
of New York, acting on respondent's behalf, filed a motion to dismiss the
amended petition as premature in light of the fact that petitioner's direct
appeal was still pending in the Appellate Division.  Dkt. Nos. 17-19.
Petitioner filed a response on November 30, 2004, advising that his
direct appeal had been rejected on July 15, 2004.  Dkt. No. 23.   On
December 7, 2004, I recommended that respondent's motion to dismiss
the petition be denied as moot, and petitioner be directed to file a second
amended petition setting forth each ground asserted in support of his
request for habeas relief.  Dkt. No. 24.  The recommendation was
adopted in its entirety in an order issued by Senior District Judge
Frederick J. Scullin on March 30, 2005, and petitioner was directed to file
a second amended petition within thirty days of the date of that order.
Dkt. No. 28.

Petitioner filed a second amended petition, accompanied by a
motion to stay the proceeding in order to allow him to present his
unexhausted claims in state court, on April 22, 2005.  Dkt. Nos. 29 & 30.

A stay was issued on October 27, 2005, and petitioner was ordered to commence one or more post-conviction proceedings in the appropriate state court, in order to fully exhaust his claims. Dkt. No. 32.   Petitioner was also directed to keep the court apprised of the status of any state court proceedings, and to file a motion for leave to amend his petition within thirty days of their final resolution.  *Id.*

On January 13, 2006, petitioner filed a motion to amend his petition, accompanied by a proposed amended petition and supporting exhibits.  Dkt. No. 34.  Superintendent Miller responded on January 23, 2006 with the filing of a declaration in opposition to petitioner's motion to amend his petition on the ground that the proposed amended petition still contained unexhausted, as well as non-cognizable, claims.  Dkt. Nos. 35 & 36.  Petitioner thereafter filed a reply as well as a second motion for leave to amend his petition, both on April 18, 2006.  Dkt. Nos. 42 & 43. In support of this second motion, petitioner claimed that an inmate law clerk "discovered and informed petitioner of several errors committed by the previous law clerk" with respect to the first motion for leave to amend.  *Id.*  To correct these errors, petitioner requested permission to file the second motion to amend.  *Id.*  Respondent opposed that motion.

15

Dkt. No. 45.

On October 10, 2006, I denied petitioner's January 13, 2006

motion to amend his petition as moot, and granted his April 18, 2006

motion to amend. Dkt. No. 46.  The amended petition was filed and

docketed on October 10, 2006.  Dkt. No. 47.  On November 30, 2006,

respondent filed an answer to Martinez's amended petition,

accompanied by a legal memorandum and the relevant state court

records and transcripts.  Dkt. Nos. 50-53, 58.

With its tortured state and federal court procedural history, this

proceeding at long last appears to be ripe for determination, and has

been referred to me for the issuance of a report and recommendation,

pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York

Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Standard of Review

Enactment of the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought

about significant new limitations on the power of a federal court to grant

habeas relief to a state court prisoner under 28 U.S.C. § 2254. Under the

16

AEDPA, a federal court may grant habeas corpus relief with respect to a

claim adjudicated on the merits in state court only if the adjudication of

the claim: (1) was contrary to, or involved an unreasonable application

of, clearly established federal law, as determined by the Supreme Court

of the United States; or (2) was based on an unreasonable determination

of the facts in light of the evidence presented in the state court

proceeding.[6] *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007);

*Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006), *cert. denied* 127

S. Ct. 1267 (2007); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005)

(citing 28 U.S.C. § 2254(d)), *cert. denied*, 546 U.S. 884, 126 S. Ct. 225

(2005).  The AEDPA also requires that in any such proceeding "a

determination of a factual issue made by a State court shall be

presumed to be correct [and][t]he applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry,* 403 F.3d at 66;

*Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

Because the AEDPA's restriction on federal habeas power was

---

[6] It should be noted that "clearly established federal law" in this context "refers only to the holdings of the Supreme Court." *Rodriguez v. Miller*, 537 F.3d 102, 106 (2d Cir. 2008) (citing *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495 (2000)).

17

premised in no small part upon the duty of state courts to uphold the
Constitution and faithfully apply federal laws, the AEDPA's exacting
review standards apply only to federal claims which have been actually
adjudicated on the merits in the state court.  *Washington v. Schriver*, 255
F.3d 45, 52-55 (2d Cir. 2001).  Specifically, as the Second Circuit
explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference,
a state court 'adjudicate[s]' a state prisoner's federal claim on the merits
when it (1) disposes of the claim 'on the merits,' and (2) reduces its
disposition to judgment."  261 F.3d 303, 312 (2001); *see Jimenez v.
Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (citing *Sellan*), *cert. denied* 127
S. Ct. 976 (2007).  Significantly, the Second Circuit further held that
when a state court adjudicates a claim on the merits, "a federal habeas
court must defer in the manner prescribed by § 28 U.S.C. 2254(d)(1) to
the state court's decision on the federal claim – *even if the state court
does not explicitly refer to either the federal claim or to relevant federal
case law*."  *Sellan*, 261 F.3d at 312 (emphasis added).

A state court decision violates the "contrary to" clause of section
2254(d)(1) when it "reaches a result opposite to the one reached by the
Supreme Court on the same question of law or arrives at a result

18

opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts." *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Williams*, 529 U.S. at 405-06). A federal habeas court may only grant the writ under the "unreasonable application" clause of the section when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way." *Earley*, 451 F.3d at 74 (citing *Williams*, 529 U.S. at 413). A federal court engaged in habeas review is not charged with determining whether the state court's decision was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan,* 261 F.3d at 315.  The use of the term "objectively unreasonable" means 'some increment of incorrectness beyond error'" is required in order to grant a federal habeas application. *Earley*, 451 F.3d at 74 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

If a state court does not adjudicate a petitioner's federal claim on the merits, the federal court must instead apply pre-AEDPA standards, and "review *de novo* the state court disposition of the petitioner's federal constitutional claims." *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir.

19

2003)(quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).  *See*

*Gilfus v. Vargason*, Nos. 04-CV-188, 04-CV-189, 04-CV-190, 2008 WL

65579, at *7 (N.D.N.Y. Jan. 3, 2008)(Hurd, D.J., and Treece, M.J.)(citing

*Cotto*).

    B.    <u>Ground One: Grand Jury Testimony</u>

In his first ground, Martinez contends that he was denied the right

to testify before the grand jury despite giving timely notice of his intention

to do so.  Dkt. No. 47, at 6-7.  Respondent argues that this claim is not

cognizable on habeas review and, in any event, is procedurally barred.

Dkt. No. 51, at 20-24.

Alleged errors in a state grand jury proceeding, including claims

that a petitioner was not afforded the opportunity to testify at grand jury,

are not cognizable on federal habeas review.  *Lopez v. Riley,* 865 F.2d

30, 32-33 (2d Cir. 1989)("The particular claims of impropriety before the

grand jury in this case concern the sufficiency of the evidence, a failure

to develop exculpatory evidence by the prosecutor, the presentation of

prejudicial evidence and error in explaining the law" which were cured by

petitioner's conviction by a "petit jury" and, therefore, were not

cognizable on habeas review). In New York, a defendant's right to testify

before the grand jury is not a federal constitutional right but, rather, is a statutorily created right under CPL§190.50(5)(a) that does not "rise to a [c]onstitutional level." *Green v. Artuz*, 990 F. Supp. 267, 273 & n. 8 (S.D.N.Y.1998). *See King v. Greiner,* No. 02 Civ. 5810, 2008 WL 4410109, at *50 & n.64 (S.D.N.Y. Sept. 26, 2008)(collecting cases finding that the denial of the right to appear at grand jury is not cognizable on federal habeas review); *Van Stuyvesant v. Conway*, No, 03 Civ. 3856, 2007 WL 2584775, at *26 (S.D.N.Y. Sept. 7, 2007) (petitioner's claim that he was arbitrarily denied his right to testify before the grand jury in violation of his due process rights was, "at bottom, state law claims that are not cognizable on habeas review."); *Lucius v. Filion*, 431 F. Supp. 2d. 343, 346 (W.D.N.Y. 2006)("a defendant's right to testify before the grand jury is not a federal constitutional right; rather, it is a statutorily created right in New York."); *Moore v. Herbert,* No. 02-CV-0999, 2005 WL 3591815, at *11 (N.D.N.Y. Dec.  30, 2005) (Mordue, D.J.) ("a claim arising out of a defendant's failure to testify before a grand jury does not afford a petitioner a basis for federal habeas relief."); *People v. Smith*, 87 N.Y.2d 715, 719, 665 N.E.2d 138, 141, 642 N.Y.S.2d 568, 571 (1996)(right to testify before grand jury in New York is

a statutorily created right).

Even if the refusal of state officials to permit the petitioner to testify amounted to an error of constitutional proportions, petitioner's subsequent conviction by a jury cured any arguable defects in the indictment process "because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." *Montalvo v. Annetts*, No. 02 Civ. 1056, 2003 WL 22962504, at *17 (S.D.N.Y. Dec. 17, 2003); *see United States v. Mechanik,* 475 U.S. 66, 70, 106 S. Ct. 938, 941-42 (1986) ("the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."); *Davis v. Mantello*, 42 Fed. Appx. 488, 490-91 (2d Cir. 2002)(summary order) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." ), *cert. denied,* 538 U.S. 986, 123 S. Ct. 1803 (2003); *Lopez,* 865 F.2d at 32 ( "If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in federal court." ). Accordingly,

22

petitioner's claim that he was denied the right to testify before the grand jury is not cognizable on federal habeas review, and this claim should therefore be dismissed.

     C.    Ground Two: Personal and Subject Matter Jurisdiction

In ground two, petitioner claims that the trial court lacked personal and subject matter jurisdiction because it failed to secure his personal appearance during arraignment.  Dkt. No. 47, at 7-8.  Respondent counters that this claim is both procedurally barred and without merit. Dkt. No. 51 at 24-26.

     1.    Procedural Bar

Petitioner raised this claim in his CPL § 440.10 motion to vacate his conviction.  *See* Dkt. No. 52, Ex. P, at 8-10.  The trial court rejected it under CPL § 440.10(2)(c) because petitioner could have raised this claim on direct appeal, but did not. *See* Docket No. 52, Ex. Q. The Second Circuit has held that the denial of a claim under CPL § 440.10(2)(c) rests upon an adequate and independent state ground. *Fernandez v. Artuz*, 402 F3d 111, 115 n. 4 (2d Cir. 2005); Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003); *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997). Federal review of the claim is therefore barred

23

unless the petitioner demonstrates either 1) both good cause for and actual prejudice resulting from his procedural default, or 2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice – that is, the conviction of a petitioner who is actually innocent.  *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986); *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S. Ct. 1489, 1503 (1998); *Coleman v. Thompson*, 501 U.S. 722, 748-750, 111 S. Ct. 2546, 2566 (1991)*; Fama v. Comm'r. of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir. 2000); *Garcia v. Lewis*, 188 F.3d 71, 76-77 (2d Cir. 1999)*.

To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule.  *Coleman,* 501 U.S. at 753, 111 S. Ct. at 2566 (citing *Murray,* 477 U.S. at 488, 106 S. Ct. at 2645); *Resprepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999). Examples of such external mitigating circumstances can include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or

on direct appeal.[7]   *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645.  When a petitioner has failed to establish adequate cause for his or her procedural default, the court need not go on to also examine the issue of prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006)(McCurn, S.J.); *Staley v. Griener*, No. 01 Civ 6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003).  In such a case, absent evidence to show the petitioner's innocence of the crime of conviction, no basis is presented to conclude that the failure to consider the merits of the federal claim would result in a fundamental miscarriage of justice, which has been interpreted as amounting to "an unjust incarceration." *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000).

Here, in an apparent attempt to establish cause, petitioner alleges

---

[7]        It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753, 111 S. Ct. at 2566-67 (quoting *Murray,* 477 U.S. at 488, 106 S. Ct. at 2645).

that appellate counsel was ineffective for not raising this issue on direct appeal.  Dkt. No. 47, Ground Three, at 8-11. The ineffectiveness of counsel for not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); *Aparicio,* 269 F.3d at 91. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."  *Smith v. Murray*, 477 U.S. 527, 535, 106 S. Ct. 2661, 2667 (1986) (quoting *Murray,* 477 U.S. at 486-87, 106 S. Ct. at 2641).

As will be seen, petitioner's claim that appellate counsel was ineffective is without merit.[8]  Accordingly, this argument cannot serve as "cause" for a procedural default. *Aparicio*, 269 F.3d at 91-92.  Petitioner has also failed to present any new evidence that he is "actually innocent" of the crimes for which he was convicted.  *See Schulp v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 866 (1995).  Since petitioner has not

---

[8]    *See* pp. 27-34, *post.*

established cause, the court need not address whether petitioner

suffered prejudice, and federal review of this claim is barred. *See*

*Calderon*, 523 U.S. at 559, 118 S. Ct. at 1502; *Coleman*, 501 U.S. at

753, 111 S. Ct. at 2566; *Stepney,* 760 F.2d at 45; *Long,* 2006 WL

1977435, at *6.

　　　In any event, as a factual matter the record does not support

petitioner's claim that he was not present at the time of arraignment.

The minutes of that proceeding, held on October 27, 1999, clearly reflect

the presence of petitioner "in person".   *See* Dkt. No. 52, Ex. V.  A

calendar appearance log for that proceeding, submitted by respondent in

support of his answer, also reflects petitioner's presence at that

proceeding.  *Id.* at Ex. U.[9] Petitioner's procedurally barred claim is

therefore also without merit, and thus should be dismissed.

---

　　　[9]　　　It is worth noting that upon the return of a valid indictment against him by an Ulster County Grand Jury, petitioner was required "to proceed to trial with respect to [the] identified criminal transaction." *McMoore v. Miller,* No. 98-CV-1915, 2002 WL 975305, at *6 (N.D.N.Y. Apr. 19, 2002)(Sharpe, M.J.)(quoting *People v. Ford*, 62 N.Y.2d 275, 282, 476 N.Y.S.2d 783, 786, 465 N.E.2d 322, 325 (1984)) (additional citations omitted). Petitioner submitted himself to the jurisdiction of the trial court by appearing at conferences, hearings, and at trial. *See, e.g., People v. Ciccarello*, 276 A.D.2d 637, 637, 714 N.Y.S.2d 695, 695 (2d Dept. 2000)(finding that defendant waived the right to be present at arraignment when he refused to enter the courtroom and finding that "the defendant subsequently submitted to the court's jurisdiction by his presence at trial."), *lv. denied,* 96 N.Y.2d 733, 745 N.E.2d 1022, 722 N.Y.S.2d 799 (2001).

D.   Ground Three: Ineffectiveness of Appellate Counsel

In ground three of his petition, petitioner claims that his appellate counsel was ineffective for 1) failing to argue that he was deprived of his right to testify before the grand jury; 2) failing to procure arraignment transcripts in a timely manner and use them to argue that the trial court lacked jurisdiction because it failed to secure petitioner's presence at arraignment; and 3) failing to challenge the trial court's failure to suppress the show-up identification of petitioner made by Dan Phillips. Dkt. No. 47, Ground Three, at 8-11.  Respondent counters by asserting that these claims are without merit.  Dkt. No. 51 at 26-31.

Petitioner raised the first two grounds of appellate counsel ineffectiveness relating to his attorney's failure to argue in his *coram nobis* petition that petitioner was deprived his right to testify before the grand jury, and that the trial court therefore lacked jurisdiction in the matter.  Dkt. No. 52, Ex. L.  Since the Appellate Division considered and rejected these claims, Dkt. No. 52, Ex. M, they are deemed exhausted, and the deferential AEDPA standard of review applies. *Sellan,* 261 F.3d at 314 (ineffective assistance of counsel claim deemed adjudicated on the merits where Appellate Division denied petitioner's writ of *coram*

28

*nobis* and there was no basis to conclude that the claim was rejected on non-substantive grounds).

Petitioner's other challenge to the effectiveness of appellate counsel, to the effect that counsel failed to "argue that the trial court's identification ruling was erroneous" (Dkt. No. 47, at 8.), was never presented to the Appellate Division (*See* Dkt. No. 52, Ex. L.). Since there is no time limit for filing a writ or error *coram nobis* in state court, that procedure remains available as a state remedy. *Garcia v. Scully*, 907 F. Supp. 700, 706-07 (S.D.N.Y. 1995). This claim is therefore unexhausted. 28 U.S.C. § 2254 (b); *Dorsey,* 112 F.3d at 52.[10] A court may, in its discretion, review and deny on the merits any unexhausted claims if they are "plainly meritless", *Rhines v. Weber*, 544 U.S. 269, 277 (2005), or "patently frivolous." *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006); *Wheeler v. Phillips*, No 05-CV-4399, 2006 WL 2357973 at *5 (E.D.N.Y. Aug. 15, 2006). Finding that petitioner's claim that appellate counsel was ineffective for not challenging the trial court's identification testimony ruling is meritless, the court will therefore review and deny it even though it is unexhausted. 28 U.S.C. § 2254

---

[10]   The law of exhaustion is more fully discussed further on in this report. *See* pp. 48-51, *post*.

(b)(2).

1.   Clearly Established Supreme Court Precedent

Analysis of an ineffective assistance of appellate counsel claim is informed by the same considerations as pertain to a claim of ineffective assistance generally; to prevail on such a claim, a petitioner must demonstrate that: 1) appellate counsel's performance fell below an objective standard of professional reasonableness, and 2) but for appellate counsel's alleged errors, the results of the proceedings would have been different, and, as such, petitioner suffered prejudice.[11]  *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 764 (2000); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  When challenging the effectiveness of appellate counsel, a petitioner must demonstrate that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994), *cert. denied,* 513 U.S. 820, 115 S. Ct. 81 (1994).  A petitioner must show more than counsel's failure to raise a non-frivolous argument, as counsel is required to use professional

---

[11]     The constitutional standard against which a defense attorney's performance must be judged is more fully discussed further on in this report. *See* pp. 57-59, *post.*

judgment when deciding to concentrate on a few key issues while

eliminating weaker arguments, and is not required to advance every

argument, regardless of merit, urged by the petitioner.  *Evitts v. Lucey*,

469 U.S. 387, 394, 105 S. Ct. 830, 835 (1985); *Jones v. Barnes*, 463

U.S. 745, 751-52, 103 S. Ct. 3308, 3312 (1983); *Sellan,* 261 F.3d at 317.

2.   Contrary to or Unreasonable Application of Clearly
     Established Supreme Court Precedent

Analyzed under these standards, the record fully supports the

Third Department's rejection of petitioner's claims that appellate counsel

was ineffective.  Petitioner's counsel filed a thirty-one page brief,

accompanied by an extensive appendix, in which he advanced six claims

which in his opinion had the greatest chance of success. Dkt. No. 52, Ex.

E. Counsel also filed a nine-page reply brief in response to the

prosecutor's brief, and sought leave to appeal to the Court of Appeals on

the issues he believed might be successful.  *Id.* at Exs. H, I.

Despite these efforts, petitioner maintains that appellate counsel

should have argued that his due process rights were violated when his

request to testify before the grand jury was allegedly ignored.  Appellate

counsel likely appreciated, however, that this claim had been waived,

and thus it was doubtful that the Appellate Division would review or grant

31

relief on the claim.

Under New York CPL § 190.50(5)(c), a motion to dismiss an indictment on the basis that the defendant was not given an opportunity to testify before the grand jury must be made within five days of arraignment or the claim is "waived and the indictment . . . may not thereafter be challenged on such ground."  Petitioner's trial counsel filed omnibus motions, and moved to inspect the grand jury minutes and dismiss the indictment based upon two grounds, maintaining that 1) the evidence presented was legally insufficient to sustain the indictment; and 2) petitioner's speedy trial rights had been violated.  *See* Dkt. No. 58, Ex. F, at A24, A27, R82, R89-90 (citing CPL §§210.30, 210.20(1)(b), and 210.20(1)(g)). Counsel did not, however, seek dismissal of the indictment on the ground that petitioner was not afforded an opportunity to testify before the grand jury.  Dkt. No. 58, Ex. F at R82, R89-90. Appellate counsel cannot be considered ineffective for failing to raise a waived claim, and focusing instead on other, viable claims.  "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S.

32

527, 536, 106 S. Ct. 2661, 2667 (1986) (quoting *Jones,* 463 U.S. at 751-52, 103 S. Ct. 3312 (1983)); *Torres v. McGrath*, 407 F. Supp. 2d 551, 562 (S.D.N.Y. 2006) ("'[f]ailure to make a meritless argument does not amount to ineffective assistance'") (*quoting United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999), *cert. denied,* 531 U.S. 811, 121 S. Ct. 33 (2000)).

Appellate counsel also likely perceived that petitioner's claim that the trial court lacked jurisdiction was without merit.  As petitioner's exhibits confirm, appellate counsel made several attempts to obtain the missing arraignment transcript, and diligently pursued extensions of time in which to file the appellate brief in order to allow his review of the transcript prior to challenging petitioner's conviction.  *See* Dkt. No. 47, Attached Exhibits.  The arraignment transcript, along with a record of calendar appearances, both show that petitioner was present in court for arraignment.  Dkt. No. 52, Exs. U, V.  In light of these circumstances, I am unable to conclude that appellate counsel's failure to raise a jurisdiction claim based upon a theory that petitioner was not present at arraignment constituted ineffective assistance.  *See Arena*, 180 F.3d at 396.

Finally, petitioner claims that appellate counsel was ineffective for failing to "argue that the trial court's identification ruling was erroneous." Dkt. No. 47, at 8. Petitioner has presented no facts or argument in support of this assertion. In any event, this claim is belied by the record, which reveals that counsel did, in fact, challenge the show-up identification procedure on direct appeal.  Dkt. No. 52, Ex. E at 19-24. Appellate counsel's failure to raise this claim in the leave application to the Court of Appeals was harmless in light of the fact that petitioner raised it in his *pro se* supplemental leave application, and leave to appeal was nonetheless denied.  *See* Dkt. No. 52, Exs. J, K.

In sum, the Appellate Division's rejection of petitioner's claim that appellate counsel was ineffective was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  I therefore recommend that this claim be dismissed.

      E.    Ground Four: Failure to Give Notice of Statement

Petitioner next argues that the prosecutor failed to give notice of his intent to use petitioner's statements to Detective Snyder at trial, as required by CPL §710.30, and that those statements should therefore have been precluded.  Dkt. No. 47, Ground Four, at 11-12.  Respondent

34

argues that since this claim relates solely to a state statutory procedure, and does not implicate the issue of whether petitioner's statement was voluntarily given, it is not cognizable on federal habeas review.  Dkt. No. 51, at 31-32.

This argument was raised by the petitioner on direct appeal, Dkt. No. 52, Ex. E, at 10-15, and rejected by the Third Department.  The appeals court first pointed out that the purpose of CPL §710.30 was to give a defendant the opportunity to challenge the admissibility of statements made to law enforcement officials, and which the prosecutor intends to introduce at trial, and that the failure to give notice under CPL §710.30 may be excused if a defendant moves for suppression of the statements.  *Martinez*, 9 A.D.3d at 680, 779 N.Y.S.2d 821.  The court ruled that since petitioner moved to suppress all statements made by him, and did not object when Detective Snyder testified at trial regarding the unnoticed statements, petitioner "waived any CPL 710.30 notice deficiency." *Id.*

It is well settled that "federal habeas corpus relief does not lie for errors of state law", absent a corresponding violation of federal constitutional rights.  *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct.

475, 480 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990)).  The notice requirements of CPL §710.30 are a creation of state statute.  Courts in this circuit faced with habeas claims grounded in CPL §710.30 have repeatedly held that such claims do not implicate federal constitutional rights, and accordingly are not cognizable on habeas review. *Brown v. Harris,* 666 F.2d 782, 785 (2d Cir.1981) ("Brown cites no case indicating that this statute [CPL § 710.30], or that a notice requirement in general, is constitutionally mandated."), *cert. denied,* 456 U.S. 948, 102 S. Ct. 2017 (1982); *Moss v. Phillips*, No. 03-CV-1496, 2008 WL 2080553, at *12 (N.D.N.Y. May 15, 2008)(Kahn, D.J.)("alleged violations of CPL § 710.30's notice provision – a state procedural law – do not provide an independent ground for federal habeas relief."); *Dotson v. Ercole*, No. 06 Civ 7823, 2007 WL 1982730, at *4 (S.D.N.Y. Jul. 10, 2007)("Violation of this state right to notification does not rise to the level of a constitutional violation.") (quoting *Aziz v. Warden of Clinton Corr. Fac.*, No. 92 Civ. 0104, 1992 WL 249888, at *10 (S.D.N.Y. Sept. 23 1992), *aff'd,* 993 F.2d 1533 (2d Cir. 1993), *cert. denied,* 510 U.S. 888, 114 S. Ct. 241 (1993)); *McCullough v. Filion*, 378 F. Supp. 2d 241, 261 (W.D.N.Y. 2005) (violation of CPL §710.30 is not

36

cognizable on federal habeas review).

Petitioner's claim regarding lack of the statutorily required notice is based entirely on an alleged state law violation, and he has not alleged, much less proven, that his alleged federal constitutional rights were violated by the prosecutor's failure to provide the required notice. Accordingly, I recommend that this claim, based on an alleged state procedural error, be dismissed.

F.     Ground Five: Evidence Seized Pursuant to the Second Search Warrant

In the fifth ground of his petition, Martinez alleges that the trial court erred when it ruled that the second warrant issued authorizing a search of his home was supported by probable cause, and therefore denied suppression of evidence seized under authority of the warrant. Dkt. No. 47, at 12-13.  Respondent argues that this claim is not cognizable.  Dkt. No. 51 at 33-34.

Petitioner raised this claim in the trial court, alleging that since the first and second search warrants were based upon the same facts and police sought to recover the same or similar items under each warrant, there was no additional probable cause to support the issuance of the second search warrant, which was obtained approximately one month

37

after the first warrant. *See* Transcript of Suppression Hearing, ("Hearing Tr.") at 222-25.  The trial court rejected petitioner's suppression motion, and the Third Department affirmed, holding that the second search warrant was properly issued as part of a "continuing investigation which developed new information linking defendant to other burglaries," and that this new information, developed after the issuance and execution of the first search warrant, "provided the requisite probable cause as determined by the issuing magistrate[.]" *Martinez*, 9 A.D.3d at 680, 779 N.Y.S.2d at 821.

The merits of a state court's determination that there was sufficient probable cause to support the issuance of a search warrant may not be challenged on habeas review, provided that the state courts afforded "an opportunity for full and fair litigation" of a claim under the Fourth Amendment.  *Stone v. Powell*, 428 U.S. 465, 482, 96 S. Ct. 3037, 3046 (1976). *See Couser v. Zon,* No. 05-CV-1040, 2008 WL 2440709, at *18-20 (N.D.N.Y. June 17, 2008)(McAvoy, S.J. and Bianchini, M.J.)(claim that search warrant for petitioner's prison cell was obtained through false and misleading information not cognizable on habeas review); *Griffin v. New York State Dept. of Corr.,* No. 06 Civ. 14217, 2007 WL 1296203, at

*1 (S.D.N.Y. May 2, 2007) (petitioner's claim that the search warrant leading to the seizure of a rifle was issued without probable cause not cognizable on habeas review); *Castillo v. Miller*, No. 04 Civ. 6157, 2005 WL 1036346, at *5 (S.D.N.Y. May 4, 2005)(quoting *Stone*, 428 U.S. at 481-82, 96 S. Ct. at 3046)("The state court ultimately found that the search warrant application established probable cause to search the apartment. Under *Stone v. Powell*, that determination may not be challenged on the merits on habeas corpus, provided that the State 'has provided an opportunity for full and fair litigation of [petitioner's] Fourth Amendment claim.'").

A federal court may only review a claim based on the Fourth Amendment "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Reilly,* 975 F.2d 67, 70 (2d Cir. 1992)(citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir.1977), *cert. denied,* 434 U.S. 1038, 98 S. Ct. 775 (1978)); *Campbell v. Greene,* 440 F. Supp. 2d 125, 138 (N.D.N.Y. 2006)(McCurn, S.J.)(citing *Capellan*).

New York has in place a corrective procedure for Fourth Amendment violations, and that procedure has been found to be facially adequate. *See* CPL §710; *Capellan,* 975 F.2d at 70 n. 1. Under CPL § 710, a defendant may move to suppress evidence alleged to have been unlawfully obtained when he or she has "reasonable cause to believe that such [evidence] may be offered against him [or her] in a criminal action." *Huntley v. Superintendent, Southport Corr. Fac.*, No. 00-CV-191, 2007 WL 319846, at *7 (N.D.N.Y. Jan. 30, 2007)(Hurd, D.J. and Lowe, M.J.)(quoting CPL § 710.20). The Second Circuit has held that "once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).

Petitioner availed himself of New York's procedure for challenging the admissibility of evidence by making a motion to suppress the evidence seized under the second search warrant, a motion which the trial court denied after a hearing, and by appealing that denial. Petitioner

40

does not now allege that he was denied a full and fair hearing on this issue. Petitioner's fifth claim is therefore barred under *Stone*.  *See Griffin v. New York State Dept. of Corr.*, No. 06 Civ. 14217, 2007 WL 1296203, at *1 (S.D.N.Y. May 2, 2007)(petitioner's claim that evidence was unlawfully seized because the search warrant was issued without probable cause was not cognizable on habeas review where petitioner had full and fair opportunity to litigate the issue); *Bell v. Murray*, 340 F. Supp. 2d 323, 332 (W.D.N.Y. 2004)("Bell's various applications at the trial court and appellate levels challenging the search warrant clearly show that he was given an opportunity for a "full and fair" litigation of his Fourth Amendment claim. Therefore, it is not cognizable on habeas review.").

      G.     Ground Six: The Show-Up Identification

Petitioner next asserts that the show-up identification procedure conducted shortly following his arrest was unduly suggestive since it took place while he was handcuffed and in the back of a police car, and maintains that the resulting identification should therefore have been suppressed.  Dkt. No. 47, at 13-14.  Respondent argues that this claim is without merit.  Dkt. No. 51, at 38.

Petitioner raised this claim on direct appeal, and the Appellate Division rejected it, finding that although show-up identification procedures are considered inherently suggestive, this procedure, which occurred only twenty minutes after commission of the crime and within one mile of the crime scene, was not unduly suggestive, and therefore denied relief on this claim.  *Martinez*, 9 A.D.3d at 681, 779 N.Y.S.2d 821. That determination, which is entitled to AEDPA deference, was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

### 1.    Clearly Established Supreme Court Precedent

Under the Fourteenth Amendment's due process clause, eyewitness identification testimony will be suppressed only if the pretrial identification procedure created a "very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968). *See Neil v. Biggers*, 409 U.S. 188, 196-98, 93 S. Ct. 375, 381 (1972); *United States v. Nersesian*, 824 F.2d 1294, 1319 (2d Cir. 1987), *cert. denied,* 484 U.S. 1061, 108 S. Ct. 1018 (1987); *Diggs v. Spitzer,* No. 06 CV 584S, 2007 WL 3036862, at *6 (W.D.N.Y. Oct. 16, 2007*)*. Show-up identification procedures, in which a

single suspect is displayed to a witness for the purpose of identification shortly after a crime, are not *per se* unconstitutional, but instead run afoul of the due process clause only if they are "unnecessarily suggestive." *Jones v. West*, 473 F. Supp. 2d 390, 417 (W.D.N.Y. 2007)(quoting *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir. 1994), *cert. denied,* 513 U.S. 862, 115 S. Ct. 174 (1994)).

The Second Circuit has recognized that a show-up identification is a valid and necessary way to ensure that police have detained the actual perpetrators of the crime at issue and that innocent suspects are promptly released, and has consistently upheld the legitimacy of such procedures when they are conducted in close temporal and geographic proximity to the crime scene. *See*, *e.g.*, *United States v. Maldonado*, No. 00-1646, 20 Fed. Appx. 59, 61 (2d Cir. Oct. 3, 2001) (summary order)(Show-up identification was "not unnecessarily suggestive," as "[s]peed was essential. If the police had arrested the wrong individuals they needed to release those improperly arrested and continue their search."); *Bautista*, 23 F.3d at 729-30 (identification of handcuffed defendant by confidential informant at time of defendant's arrest was not "unnecessarily suggestive," because it was necessary to identify

perpetrators and release innocent persons); *United States v. Butler*, 970

F.2d 1017, 1021 (2d Cir.1992) (identification proper where, less than

thirty minutes after the robbery of a check cashing business, suspects

were brought to victim who was sitting in a police car), *cert. denied*, 506

U.S. 980, 113 S. Ct. 480 (1992); *United States v. Sanchez*, 422 F.2d

1198, 1199-200 (2d Cir. 1970)("prompt on-the-scene confrontation" in

which police drove suspects by witnesses on the street thirty minutes

after a robbery was "consistent with good police work" where defendants

protested their innocence; it was not impermissibly suggestive for police

to ask witnesses if suspects were "the guys").

> 2.    Contrary to or Unreasonable Application of Clearly
>        Established Supreme Court Precedent

The record in this case reflects that police officials conducted the

challenged show-up identification procedure in an effort to promptly

ascertain whether petitioner was the person Dan Phillips saw inside his

home.  Petitioner was detained within minutes after fleeing and within

one mile of the crime scene.  Hearing Tr. at 48-51, 79-80, 84-86, 114-16.

Police officials did nothing to influence Phillips's identification of

petitioner, asking only if Phillips could identify the petitioner without

revealing that they had detained Martinez as the person who broke into

his home.  Trial Tr. at 84, 133. *See Sanchez*, 422 F.2d at 1199-200.

While petitioner was handcuffed and in Officer Grube's patrol car

when Phillips identified him (*Id.* at 35-39, 51-52,79-80, 85-86), those

factors alone do not compel a finding that the show-up was unduly

suggestive.  The Second Circuit has held that the use of handcuffs and

the fact of police custody are "necessary incidents of an on-the-scene

identification" that do not "render the pre-trial identification procedure

unnecessarily suggestive." *Bautista*, 23 F.3d at 730 (show-up not

unnecessarily suggestive where defendant was presented to the witness

"in handcuffs; at night; in the custody of police officers; with his face lit by

flashlights; and in the presence of [an officer] who, each time [the

witness] identified a suspect, radioed to his fellow officers, '[I]t's a hit'");

*United States v. Mohammed*, 27 F.3d 815, 821-22 (2d Cir. 1994) (show-

up while defendant sat in police car was reliable), *cert. denied,* 513 U.S.

975, 115 S. Ct. 451 (1994); *Torrez v. Sabourin*, No. 00 CIV. 3286, 2001

WL 401444, at *5 (S.D.N.Y. Apr.19, 2001) (identification not unduly

suggestive where complainant identified defendant while he was on his

hands and knees surrounded by police officers and patrol cars). The

45

Appellate Division's ruling that the trial court correctly determined that the show-up identification procedure was not unduly suggestive was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

It is worth noting that even when a show-up identification procedure is found to have been impermissibly suggestive, in-court identification testimony from that same witness is still admissible if, considering the totality of the circumstances, the court considers the person's testimony to be independently reliable. *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir.1994), *cert. denied,* 516 U.S. 870, 116 S. Ct. 190 (1995)(citations omitted). "Even grossly suggestive procedures will not require suppression of a witness'[s] identification testimony if it is clearly reliable, independent of improper procedures." *Styers v. Smith*, 659 F.2d 293, 297 (2d Cir.1981). *See also Neil,* 409 U.S. at 198-200, 93 S. Ct. at 381-84.  A court must consider five factors when evaluating the reliability of an identification, including 1) the opportunity of the witness to view the criminal at the time of the crime; 2) degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the level of

46

certainty demonstrated by the witness at the confrontation; and 5) the length of time between the crime and the confrontation. *Neil*, 409 U.S. at 199-200, 93 S. Ct. at 382.  *See also Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253 (1977).

Here, Phillips had ample opportunity to observe Martinez prior to the show-up, having seen him standing at his front door at approximately 12:30 p.m. and watched him run through his backyard. Hearing Tr. at 52-54.  While Phillips was on the telephone with police, petitioner returned to the house, conversed briefly with Phillips, got into his car, and sped away.  Hearing Tr. at 54-55, 105-108.  The description of petitioner and his car given by Phillips were accurate.  *Id.* at 35, 38-40, 107-109. Phillips identified the petitioner, as well as the car he drove, within minutes of the encounter and without hesitation.  *Id.* at 51-52, 84-85, 114-16.  Thus, even if the show-up procedure was unduly suggestive, Phillips' in-court identification would nonetheless have been properly admitted since it was sufficiently reliable independent of the show-up. *Neil*, 409 U.S. at 199-200, 93 S. Ct. at 382-83; *Raheem v. Kelly*, 257 F.3d 122, 135-36 (2d Cir. 2001), *cert. denied,* 534 U.S. 1118, 122 S. Ct.

930 (2002). This ground of the petition should therefore be dismissed.

> H.    Ground Seven: Alleged Improper Bolstering Evidence

Petitioner next alleges that the trial court improperly permitted

Officers Janso and Grube to testify regarding Phillips' identification of

him at the show-up, contending that the testimony constituted improper

bolstering.  Dkt. No. 47, at 14-15.  Petitioner also claims that trial counsel

was ineffective for not objecting to that testimony.  *Id.* Respondent

argues that this claim is unexhausted, procedurally barred, and not

cognizable on habeas review.  Dkt. No. 51, at 17-18, 39-45.

> 1.    Exhaustion

An application for a writ of habeas corpus may not be granted until

the prisoner has exhausted all remedies available in state court unless

there is an "absence of available state corrective process" or

"circumstances exist that render such process ineffective to protect the

rights of the applicant." 28 U.S.C. § 2254 (b).  To satisfy the exhaustion

requirement, a petitioner must do so both procedurally and substantively.

Procedural exhaustion requires that a petitioner raise all claims in state

court prior to raising them in the habeas corpus petition. Substantive

exhaustion requires that a petitioner "fairly present" any constitutional claims to the highest state court in the same factual and legal context in which it appears in the habeas petition. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004); *Fama,* 235 F.3d at 808; *Sweeney v. Superintendent, Watertown Corr. Fac.*, No. 06-CV-0663, 2007 WL 2176987, at *5 (E.D.N.Y. Jul. 27, 2007). A claim is deemed exhausted when no real avenue remains by which it could be raised.  *See Aparicio*, 269 F.3d at 90 (a claim may be deemed exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile.") (citing *Reyes,* 118 F.3d at 139); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)(federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile), *cert. denied*, 532 U.S. 943, 121 S. Ct. 1404 (2001).

Petitioner's bolstering claim was raised in state court, but was based entirely upon New York law, without reference to federal law or the Constitution.  *See* Dkt. No. 52, Ex. E, App. Br. at 24-25.  Although

petitioner included this claim in his *pro se* supplemental leave application to the New York Court of Appeals, his argument to that court mimicked the claim presented to the Appellate Division, similarly relying solely upon New York law.  Dkt. No. 52, Ex. J, at 5-6.  The state cases cited in petitioner's counseled appellate brief and his *pro se* submission to the Court of Appeals also do not contain any reference to federal law or the Constitution, relying instead solely upon New York case law and criminal procedure rules. *See People v. Towbridge,* 305 N.Y. 471, 475-78, 113 N.E.2d 841 (1953)("The controversy as to [testimony's] admissibility centers about section 393-b of the Code of Criminal Procedure . . ."), *overruling recognized by People v. Lagana*, 36 N.Y.2d 71, 74, 324 N.E.2d 534, 535, 365 N.Y.S.2d 147, 149 (1975); *People v. Bolden*, 58 N.Y.2d 741, 742-43, 445 N.E.2d 198, 459 N.Y.S.2d 22 (1982)(Gabrielli, J., concurring).  Accordingly, since it does not appear any federal constitutional claim related to bolstering was fairly presented to the state courts, this claim is unexhausted.  *Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351 (holding that "ordinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief

50

(or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."); *Picard v. Connor,* 404 U.S. 270, 278, 92 S. Ct. 509, 513 (1971); *Daye*, 696 F.2d at 189-90.

## 2.   Procedural Default

While petitioner has yet to fairly present a federal constitutional claim based upon bolstering to the state courts, he may no longer do so, since in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division." *Aparicio*, 269 F.3d at 91.  Because "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing CPL §440.10(2)(c)), petitioner cannot now properly raise a federal constitutional claim, which is based on the record, by way of a section 440 motion.  *Aparicio*, 269 F.3d at 91; *Bossett,* 41 F.3d at 829.  This claim is therefore "deemed exhausted" but procedurally defaulted. *See Coleman,* 501 U.S. at 732, 111 S. Ct. at 2555; *St. Helen v. Senkowski,* 374 F.3d 181, 183 (2d Cir. 2004), *cert. denied,* 543 U.S. 1058, 125 S. Ct. 871 (2005); *Aparicio*, 269 F.3d at 90; *Spence,* 219 F.3d at 170.

51

Petitioner is also procedurally barred from pursuing his bolstering claim in light of the state court's finding that this claim was not properly preserved for appellate review since there was no objection to the officers' testimony at trial. *Martinez*, 9 A.D.3d at 681, 779 N.Y.S.2d 821 (citing CPL §470.02(2)). The Appellate Division's ruling was based on the application of New York's contemporaneous objection rule, a procedural rule that is "firmly established and regularly followed." *Garvey v. Duncan,* 485 F.3d 709, 714-15, 718 (2d Cir. 2006). *See Wainwright v. Sykes*, 433 U.S. 72, 88, 97 S. Ct. 2497, 2507 (1977)(noting the state interests served by a contemporaneous objection rule); *Bossett,* 41 F.3d at 829 n. 2 (respecting state court's application of New York CPL § 470.05(2) as adequate bar to federal habeas review), *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir.1991) (ruling that the failure to make a contemporaneous objection constituted a procedural default under New York law.), *cert. denied,* 502 U.S. 883, 112 S. Ct. 236 (1991). The failure to object at trial on a specific ground "results in a procedural bar unless application of the state rule is exorbitant." *Texidor v. Artus*, No. 06 Civ. 7173, 2007 WL 1982271, at *4 (S.D.N.Y. Jul. 10, 2007).

The Second Circuit has identified three factors to be considered when evaluating the application of a state procedural bar in the context of the contemporaneous objection rule, including whether 1) "perfect compliance with the rule would have changed the trial court's decision;" 2) state case law indicated that compliance with the rule was required in the specific circumstances; and 3) the petitioner "substantially complied" with the rule given the "realities of the trial." *Garvey*, 485 F.3d at 719-20 (quoting *Lee v. Kenna*, 534 U.S. 362, 381-85, 122 S. Ct. 877, 888-89 (2002)); *see also Cotto,* 331 F.3d at 240.

The Appellate Division's application of the procedural bar was reasonable in this case.  New York law requires a specific, contemporaneous objection for an argument to be preserved for appellate review. *See* CPL §470.05(2); *People v. Gray*, 86 N.Y.2d 10, 19, 652 N.E.2d 919, 629 N.Y.S.2d 173, 175 (1995).  Had counsel objected to the testimony at issue, the trial court would have been afforded a timely opportunity to consider whether to exclude it before the issue was raised on appeal. *See Garvey*, 435 F.3d at 715-16.  Thus, the Appellate Division's application of the state procedural bar constitutes an

independent and adequate state ground for the Appellate Division's
holding. *Id.*

As was previously noted, this court may review petitioner's
procedurally barred claim only if he demonstrates cause for the default
and resulting prejudice, or a "fundamental miscarriage of justice."[12]
*Calderon,* 523 U.S. at 559, 118 S. Ct. at 1502; *Coleman,* 501 U.S. at
748-750, 111 S. Ct. at 2564-65.  Petitioner offers no explanation for his
failure to fairly present the federal constitutional nature of this claim in
the state courts. In an attempt to excuse the violation of New York's
contemporaneous objection rule, petitioner argues that trial counsel was
ineffective because he failed to object to the testimony at issue, and
thereby preserve the issue for appeal. Dkt. No. 47, at 15.  But, as was
also previously noted, the ineffectiveness of counsel for not preserving a
claim in state court will establish cause for a procedural default only
when counsel was so ineffective that the representation violated the
petitioner's Sixth Amendment right to counsel.  *Edwards,* 529 U.S. at
451; *Aparicio*, 269 F.3d at 91.

---

[12]     *See* pp. 23-25, *ante.*

Here, the Appellate Division explicitly rejected petitioner's claim that trial counsel was ineffective for not objecting to this testimony. *Martinez*, 9 A.D.3d at 681, 779 N.Y.S.2d 821. As will be seen, that decision was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.  Petitioner's meritless claim that trial counsel was ineffective thus may not serve as "cause" to excuse the procedural default.  *Aparicio,* 269 F.3d at 91-92.  It is therefore unnecessary to decide whether petitioner suffered actual prejudice in the absence of a showing of cause to excuse the procedural default. *Stepney,* 760 F.2d at 45; *Staley,* 2003 WL 470568, at *7 (*citing Stepney*), *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, D.J.).

It is worth noting, moreover, that petitioner cannot establish prejudice "because alleged 'bolstering' of a prosecution witness' testimony does not state a constitutional claim redressable on federal habeas" review.  *Minigan v. Donnelly*, No. 01-CV-0026A, 2007 WL 542137, at *12 (W.D.N.Y. Feb. 16, 2007)(citations omitted). *See Adkins v. Greene*, No. 05-CV-522, 2008 WL 3155825, at *9 (N.D.N.Y. Aug. 4,

2008)(Scullin, S.J. and Bianchini, M.J.)("it is well-established that claims based upon alleged violations of the *Trowbridge* bolstering rule are not cognizable on habeas review.").  I also find no basis to conclude that this court's failure to consider the merits of this claim would result in a fundamental miscarriage of justice, which has been interpreted as amounting to "an unjust incarceration."  *Spence*, 219 F.3d at 170. I therefore recommend that petitioner's bolstering claim be denied.

> 3.   Trial Counsel's Failure to Object to Alleged Bolstering Testimony

Embedded within the seventh ground of Martinez's petition is his claim that trial counsel was ineffective for failing to object to Officers Janso's and Grube's testimony to the effect that Phillips identified him at the show-up.  Dkt. No. 47, at 15.  Respondent maintains that this claim is without merit.

The Third Department rejected this claim, ruling that trial counsel's "single failure to object to the bolstering identification testimony" did not render counsel ineffective, especially in light of the fact that counsel "secured the dismissal of 13 of the 21 counts in the indictment." *Martinez*, 9 A.D.3d at 681, 779 N.Y.S.2d at 821.  The court ruled that the

"representation, viewed in totality, was meaningful."[13]  *Id.*

a)     <u>Clearly Established Supreme Court Precedent</u>

A claim of ineffective assistance of counsel is sustainable only if 1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and 2) that deficiency caused actual prejudice to the defense, in that the petitioner was effectively deprived of a fair trial.  *Strickland,* 466 U.S. at 686, 104 S. Ct. at 2064; *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 1083 (2008); *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir. 2005), *cert. denied,* 546 U.S. 1184, 126 S. Ct. 1363 (2006). To be constitutionally deficient,

---

[13]     The interplay between the well-accepted standard for judging an attorney's performance under the Sixth Amendment and the prevailing test under New York law, particularly with respect to the prejudice prong of the controlling analysis, is an issue which has received increasing attention, with recent federal decisions reflecting some degree of tension between the two points of view. *See*, *e.g.*, *Henry v. Poole*, 409 F.3d 48 (2d Cir. 2005), *cert. denied*, 546 U.S. 1040, 126 S. Ct. 1622 (2006).  Prior to rendering its decision in *Henry*, the Second Circuit had previously held that the "meaningful representation" test applied by the New York courts is not "contrary to" the governing federal standards, for purposes of the AEDPA, even though the prejudice prong of its analysis is significantly less reaching than under its federal counterpart. *Henry*, 409 F.3d at 70 (citing *Lindstadt v. Keane*, 239 F.3d 191, 198 (2d Cir. 2001), *Loliscio v. Goord*, 263 F.3d 178, 192-93 (2d Cir. 2001), and *Eze v. Senkowski*, 321 F.3d 110, 122-24 (2d Cir. 2003)). Whether that viewpoint will stand the test of time, particularly in light of the Supreme Court's decision in *Williams,* 529 U.S. 362, 120 S. Ct. 1495 (2000), is subject to some doubt. *See Henry*, 409 F.3d at 68-72; *see also Rosario v. Ercole*, No. 05 Civ. 8072, 2008 WL 4684161 at * 38 (S.D.N.Y. Oct. 22, 2008) (discussing *Henry*).

57

the attorney's conduct must fall "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S. Ct. at 2066; *Greiner*, 417 F.3d at 319 (citing *Strickland).*  An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort being made to "eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689,104 S. Ct. at 2065; *Greiner,* 417 F.3d at 619 (citing *Strickland*).

When reviewing an attorney's performance against this backdrop, a court will generally indulge in a presumption that constitutionally adequate assistance has been rendered, and significant decisions have been made through the exercise of sound professional judgment to which "a heavy measure of deference" is afforded. *Strickland,* 466 U.S. at 691, 104 S. Ct. at 2066; *Greiner,* 417 F.3d at 319 (citing *Strickland).*

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that but for the deficiency "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104

58

S. Ct. at 2068; *Henry v. Poole,* 409 F.3d 48, 63-64 (2d Cir. 2005), *cert.*
*denied,* 547 U.S. 1040, 126 S. Ct. 1622 (2006); *Reed v. Smith,* No. 05-
CV-3969, 2006 WL 929376, at *6 (E.D.N.Y. Apr. 11, 2006).  Any counsel
errors must be considered in the aggregate, rather than in isolation.
*Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). The failure to
make meritless arguments or objections cannot constitute ineffective
assistance. *Arena*, 180 F.3d at 396.

> b)   Contrary To Or Unreasonable Application of
>      Clearly Established Supreme Court Precedent

_____Analyzed under these controlling standards, petitioner's claims fail;
a review of the record fails to reveal any constitutionally significant
shortcoming on the part of petitioner's counsel in representing him.

As the Appellate Division noted, the efforts of petitioner's attorney
resulted in dismissal of thirteen of the twenty-one counts contained
within the indictment.  Trial Tr. at 187-95.  Counsel's apparent theory of
the case was that petitioner was not the person who committed the
burglaries.  Petitioner's attorney asserted that there was no proof that
Martinez was a resident of the apartment where the stolen items were
recovered, and pointed out that he was incarcerated at the time of the

execution of both search warrants, pursuant to which several stolen items were recovered. Counsel also argued that the fingerprint evidence offered at trial did not establish petitioner's guilt.  Trial Tr. at 578-94. Counsel additionally pointed out that petitioner promptly obeyed Officer Grube's command to pull over to the side of the road, an act he maintained demonstrated petitioner's innocence, and that no jewelry was found on his person even though he allegedly had just fled the crime scene.  Petitioner's attorney filed appropriate motions on his client's behalf, and vigorously cross-examined the prosecution's witnesses.  *See* Hearing Tr. at 4-242; Trial Tr. at 227-28, 241, 265-71, 295-308, 330-33, 351-60, 368, 414-33, 465-74, 528-40, 556-59.   Martinez's attorney successfully moved to have the testimony of Francis Pannone, Brenda Romanik, and Officer Alton Stewart stricken, and secured preclusion of the evidence seized pursuant to the first search warrant.  Trial Tr. at 231, 237, 357-59, 486-95.  Counsel moved for a trial order of dismissal at the close of the prosecution's case, making specific arguments as to each crime charged, and successfully argued that one count of fourth degree possession of stolen property should be reduced to fifth degree

60

possession of stolen property. *Id.* at 545-59. The court is unable to conclude that these strategies were not the product of sound professional judgment.

Petitioner's claim that trial counsel was ineffective centers upon his failure to object when Officers Grube and Janso testified that Phillips identified petitioner at the arrest location, because New York law prohibits an identification by one witness to be "bolstered" by testimony of another witness that is offered to corroborate that the identification occurred. *See Zimmerman v. Burge,* 492 F. Supp. 2d 170, 194 (E.D.N.Y. June 25, 2007) (citing *Snow v. Reid*, 619 F. Supp. 579, 582 (S.D.N.Y.1985)).  Counsel's failure to object to this testimony does not "satisfy the 'reasonable performance' prong set forth in *Strickland*" because "[u]nder New York State law, the harmless error analysis would have applied to the admission of inferential bolstering testimony." *Dorsey v. Bennett,* No. 96-CV-1637, 1999 WL 33504440, at *7 (N.D.N.Y. Feb. 23, 1999)(Sharpe. M.J.)(citing *People v. Johnson*, 57 N.Y.2d 969, 971, 443 N.E.2d 478, 479, 457 N.Y.S.2d 230, 231 (1982)). The Supreme Court has stated that a constitutional error in a state-court criminal trial is

harmless as long as it did not have a "substantial and injurious effect" on

the jury's verdict. *Fry v. Plier*, 127 S. Ct. 2321, 2328 (2007)(citing *Brecht*

*v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 1722 (1993)).  *See Rice*

*v. Senkowski*, No. 04-CV-335, 2007 WL 2789504, at *6 (N.D.N.Y. Sept.

24, 2007)(Kahn, D.J., and Peebles, M.J.).

Beyond question, counsel's failure to object did not have a

substantial and injurious effect on the jury's verdict, since Phillips had

already testified and unequivocally identified petitioner as the man seen

in his home.  Trial Tr. at 303.  Phillips accurately described the petitioner

and positively identified him at the arrest scene. Trial Tr. at 289-90.

Phillip also testified that he saw petitioner in his home, watched

petitioner run through his backyard and into a ravine, and saw petitioner

return to his home, get into a car, and flee.  *Id.* at 273-94.  Given that

testimony, there is no significant probability that the jury would have

acquitted petitioner but for the officers' testimony to the effect that

Phillips had, in fact, identified petitioner.  *See, e.g., Dorsey*, 1999 WL

33504440, at *7 (trial counsel's failure to object to alleged improper

bolstering testimony constituted harmless error because the victim

accurately described petitioner, had an opportunity to observe him in the neighborhood prior to the attack, and positively identified petitioner).

Further, strategic choices made by counsel are entitled to great deference, and decisions made by counsel after thorough preparation are "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066.  It is entirely plausible that petitioner's counsel strategically decided not to draw attention to the officers' testimony by objecting. *See Dorsey*, 1999 WL 33504440, at *7 ("Counsel might have strategically and reasonably decided not to draw attention to the officer's testimony by objecting"). On cross-examination, counsel used the officers' testimony in an effort to attack the validity of Phillips's identification of the petitioner.  Counsel established that Phillips spoke to Officer Janso prior to making the identification, and that petitioner was in the back of a patrol car when the identification took place, in an attempt to demonstrate that the procedure was improperly suggestive.  Trial Tr. at 428-30, 470-73.  Counsel also effectively argued this point to the jury. *See* Trial Tr. at 590-91 ("This was a major police event at a major intersection.  When Mr. Phillips arrived I guarantee you that he would

have identified Governor Pataki at that point as the person that was in

his house. There is no way he is going to think that whoever they have

isn't the person that did the burglary.").  I cannot say on the face of this

record that counsel's apparent strategic decision not to object to this

testimony and to instead highlight it in an effort to cast doubt on the

accuracy of Phillips' identification constituted ineffectiveness, or that

petitioner suffered prejudice.  I therefore recommend that this ground of

Martinez's petition be rejected.

> I.      Ground Eight: Failure to Charge Lesser Included Offenses

In the final ground of his petition, Martinez argues that the trial

court erred when it declined to instruct the jury regarding the elements of

second degree criminal trespass as a lesser included offense of second

degree burglary under count one of the indictment (Phillips' residence),

asserting as a basis for the request the lack of proof of his intent to

commit a crime inside the home.  Dkt. No. 47 at 15-16.  Respondent

argues that this claim is not cognizable and, in any event, is without

merit.  Dkt. No. 51 at 45-48.

At the charge conference conducted by the trial court prior to

instructing the jury, petitioner's counsel requested that the court charge

the jury on second degree criminal trespass and a violation-level

trespass, as lesser included offenses of each of the remaining second

degree burglary counts, arguing that a reasonable view of the evidence

would support a finding that petitioner lacked intent to commit a crime

inside the residences.  With regard to the Phillips burglary, counsel

argued a lack of intent because there was no evidence that petitioner

actually took any property from that residence.  Trial Tr. at 561-62, 566-

69.  The trial court denied the request.  *Id.* at 569.  The Third Department

affirmed, ruling that there was "no reasonable view of the evidence that

would support a jury finding of criminal trespass in the second degree

but not burglary in the second degree" on either burglary count.

*Martinez*, 9 A.D.3d at 681, 779 N.Y.S.2d at 821.  The court explained

that

> [b]oth victims found their bedrooms in disarray, the
> window screens cut and personal property missing.
> One victim saw defendant's car, with its trunk open,
> backed up to his bedroom window.  Moreover, in the
> absence of any evidence suggesting a noncriminal
> purpose for entry, we find no error in refusing to
> charge the lesser included offense of criminal
> trespass in the second degree.

65

*Id.*

In the face of a constitutionally-cognizable claim, the Third

Department's decision would be entitled to AEDPA deference.

Petitioner's claim that the state court failed to give a requested lesser

included offense charge, however, does not implicate such a claim, and

is not subject to federal habeas review. *Beck v. Alabama*, 447 U.S. 625,

638, n. 14, 100 S. Ct. 2382, 2390, n. 14 (1980)(expressly reserving the

question of whether due process requires a state court to charge lesser

included offenses in non-capitol cases);*Jones v. Hoffman*, 86 F.3d 46,

48 (2d Cir.1996)(citing *Beck* and declining to rule that due process

requires a trial court to submit lesser-included offenses in non-capital

cases); *Minigan,* 2007 WL 542137, at *27 ("Neither the Supreme Court

nor the Second Circuit has held that a court's failure to instruct a jury on

lesser included offenses in a non-capital case is a constitutional issue

that may be considered in a habeas petition."); *Bonilla v. Cunningham*,

No. 04-CV-4860, 2007 WL 13415, at *6 (E.D.N.Y. Jan. 2, 2007)("Failure

to charge a lesser-included offense is not cognizable in a federal habeas

corpus proceeding."). Simply stated, since no clearly established

66

Supreme Court precedent requires an instruction of the lesser included

offense of second degree criminal trespass, petitioner cannot establish

that the Appellate Division's decision was contrary to, or an

unreasonable application of, clearly established Supreme Court

precedent. *See, e.g., Smith v. Barkley*, No. 99-CV-0257, 2004 WL

437470, at *6 (N.D.N.Y. Feb. 18, 2004)(Sharpe, M.J.)(explaining that

since no clearly established Supreme Court precedent required a jury

instruction on a lesser included offense of third degree assault, the

petitioner was unable to establish that the Appellate Division's decision

denying his claim on direct appeal was contrary to, or an unreasonable

application of, clearly established Supreme Court precedent).

Accordingly, petitioner is not entitled to habeas relief based upon this

claim.

   In any event, the refusal of the state court to charge the jury on

second degree criminal trespass also appears to have been entirely

consistent with governing state law.  In New York, a trial court "may

submit in the alternative any lesser included offense if there is a

reasonable view of the evidence which would support a finding that the

67

defendant committed such lesser offense but did not commit the greater

. . . ." CPL § 300.50(1).  A defendant seeking a lesser included offense

instruction must demonstrate that 1) "it is impossible to commit the

greater crime without concomitantly, by the same conduct, committing

the lesser offense," and 2) "there is a reasonable view of the evidence in

the particular case that would support a finding that he committed the

lesser offense but not the greater." *People v. Glover*, 57 N.Y.2d 61, 63,

439 N.E.2d 376, 453 N.Y.S. 660, 661 (1982) (per curiam).

Here, as the Third Department concluded, a jury could not

reasonably view the evidence and find that petitioner was guilty of

second degree criminal trespass, since the evidence established that he

entered the homes with the intent to remove property from them, and not

simply to enter or remain there without permission.  *See, e.g., People v.

Hoyle*, 211 A.D.2d 973, 621 N.Y.S.2d 756 (3d Dept. 1995)(no error to

decline to charge second degree criminal trespass as a lesser included

offense of first degree burglary where no reasonable view of the

evidence supported defendant's claim that he committed the lesser and

not the greater), *lv. denied,* 86 N.Y.2d 736, 655 N.E.2d 714, 631

68

N.Y.S.2d 617 (1995).  This claim is therefore also lacking in merit, and does not support petitioner's request for habeas relief.

IV.    SUMMARY AND RECOMMENDATION

Based upon the foregoing I find that petitioner's eight grounds urged in support of his petition for habeas relief, most of which have been presented to and rejected by the state courts, are either procedurally barred or without merit, and in some cases both.  It is therefore hereby respectfully

RECOMMENDED, that the petition in this matter be DENIED and DISMISSED in all respects; and it is further hereby

RECOMMENDED, based upon my finding that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect to any of the claims set forth in his petition.

Pursuant to 28 U.S.C. §636 (b)(1), the parties have ten (10) days within which to file written objections to this report.  Such objections shall be filed with the clerk of the court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE

REVIEW.  28 U.S.C. §636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties pursuant to the court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      December 30, 2008
            Syracuse, NY